IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES BENJAMIN TURNER,

        Case No. 2:12-cv-00814-SI

      Petitioner,

   v.

MARK NOOTH,

        OPINION AND ORDER

      Respondent.

      Anthony D. Bornstein, Assistant Federal Public Defender
      101 S.W. Main Street, Suite 1700
      Portland, Oregon 97204

        Attorney for Petitioner

      Ellen F. Rosenblum, Attorney General
      Andrew Hallman, Assistant Attorney General
      Department of Justice
      1162 Court Street NE
      Salem, Oregon 97310

        Attorneys for Respondent

1 - OPINION AND ORDER

SIMON, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his 2004 state-court convictions for Manslaughter and Assault. For the reasons that follow, the Petition for Writ of Habeas Corpus (#1) is denied.

## BACKGROUND

The evidence in petitioner's case showed that on the morning of December 20, 2003, he drove a rented car in excess of the speed limit onto a sidewalk where he struck and killed Susan Barnett, a pedestrian. He then drove the car back onto the road where he struck another car before coming to a stop. Petitioner was arrested at the scene where he failed the officers' field sobriety tests and had trouble keeping his eyes open. Trial Transcript, pp. 370, 402. Laboratory tests of petitioner's blood and urine confirmed the presence of cocaine in his system.

The Multnomah County Grand Jury indicted petitioner on several charges, including Manslaughter in the First Degree and Assault in the Third Degree on the theory that petitioner showed an extreme indifference to the value of human life. Respondent's Exhibit 102. At trial, defense counsel argued that the State failed to prove that petitioner acted with extreme indifference. The jury disagreed and convicted petitioner on all counts. As a result, the trial court sentenced him to 123 months in prison.

Petitioner took a direct appeal, but the Oregon Court of Appeals affirmed the trial court's decision without opinion, and the Oregon Supreme Court denied review. *State v. Turner*, 214 Or. App. 292, *rev. denied*, 343 Or. 363 (2007).

Petitioner next filed for post-conviction relief ("PCR") in Malheur County where the PCR trial court denied relief on all of his claims. Respondent's Exhibit 138. The Oregon Court of Appeals affirmed the lower court's decision without opinion, and the Oregon Supreme Court ultimately denied review. *Turner v. Nooth*, 241 Or. App. 724, *rev. denied*, 351 Or. 112 (2011).

On May 7, 2012, petitioner filed his 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus in which he raises seven grounds for relief. Respondent asks the court to deny relief on the Petition because: (1) petitioner is not "in custody" with respect to some of his claims; (2) most of petitioner's claims are procedurally defaulted; (3) Oregon's state courts properly denied relief as to the only claim petitioner fairly presented to them.

## DISCUSSION

### I.  Unargued Claims

An application for a writ of habeas corpus shall not be granted unless petitioner can demonstrate that adjudication of a claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Twenty-eight U.S.C. § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Importantly, it is petitioner who is responsible for meeting this substantial burden. *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002).

With the assistance of appointed counsel, petitioner argues a single claim: whether trial counsel was constitutionally ineffective when he failed to present evidence that petitioner had a pre-existing sleep disorder that caused him to fall asleep (Ground Seven). Petitioner does not offer any argument to support the remainder of his claims, nor does he attempt to refute the State's arguments as to why those claims do not entitle him to relief. Because petitioner has failed to meet his burden of proof with respect to these issues, Grounds One through Six are denied.

## II. **Standard of Review**.

As noted above, an application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id* at 413.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous.  *Id* at 410.  The state court's application of clearly established law must be objectively unreasonable.  *Id* at 409.

///

///

5 - OPINION AND ORDER

## III. Analysis

Petitioner alleges trial counsel rendered ineffective assistance when he failed to investigate and present evidence of petitioner's sleep disorder which caused him to suddenly fall asleep without warning. He claims that this evidence would have supplied a basis for the jury to find recklessness, but not extreme indifference to the value of human life and, thus, provided the jury with a stronger basis for it to find him guilty of the lesser crime of Manslaughter in the Second Degree.

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the

6 - OPINION AND ORDER

result of the proceeding would have been different." *Id* at 694.
A reasonable probability is one which is sufficient to undermine
confidence in the outcome of the trial. *Id* at 696. When
*Strickland's* general standard is combined with the standard of
review governing 28 U.S.C. § 2254 habeas corpus cases, the result
is a "doubly deferential judicial review." *Mirzayance*, 129 S.Ct.
at 1420.

Petitioner's trial attorney supplied the State with an
affidavit in which he recalled the following:

> 3.   Mr. Turner informed me that he suffered
> from some type of a sleep condition. This
> condition would cause him to suddenly fall
> asleep. Mr. Turner also provided me pictures
> of him falling asleep while holding his child.
> I believe that Mr. Turner also provided me
> with some type of medical report regarding
> this condition and documents from his work
> demonstrating that this condition affected him
> on the job. However, I am not certain of
> this, as it has been a long time since I
> represented Mr. Turner.
>
> 4.   I did not doubt the veracity of Mr.
> Turner's assertion that he suffered from a
> sleep condition. Mr Turner did request that I
> present this condition as a defense at his
> trial. I ultimately decided not to present
> such a defense to the jury at trial.

Respondent's Exhibit 126, p. 2.

The PCR trial judge rejected petitioner's claim as follows:

> Ineffective to conduct an appropriate
> investigation. It appears that he's talking
> about the sleep disorder, the curb, and the
> glass, blah, blah. You know, the attorney
> chose - says he chose not to present the sleep

7 - OPINION AND ORDER

> disorder, and there's no evidence that was an
> incompetent decision.

Respondent's Exhibit 137, p. 22.

It is difficult to conclude from this record exactly why trial counsel elected not to present evidence of petitioner's sleep disorder. However, the remainder of the record provides some insight.

According to Darrell Turner ("Darrell"), a friend of petitioner's and fellow passenger at the time petitioner committed his crimes, petitioner had been working minimum 12-hour shifts every day and was very tired. Trial Transcript, p. 189. He nevertheless decided to drive well in excess of the speed limit with two passengers in his car, and do so with cocaine in his system. Darrell also testified that petitioner seemed to be nodding off, and when he drove the car up onto the sidewalk, he was actively steering the car but he "couldn't get him to hit the brake." *Id* at 187-88.

In the immediate aftermath of the accident, one witness saw petitioner on his cell phone and was bothered by petitioner's lack of remorse when he overheard him tell someone that "he wouldn't be here that much time. He wouldn't be that long." *Id* at 344, 357. When another witness informed petitioner that he had just killed a woman, petitioner's only response was to ask the witness for a cigarette. *Id* at 364, 357. Petitioner never came to check on the

woman he had killed, or the occupants of the car he had subsequently hit.  *Id* at 286.

Petitioner believes that in light of this record, had counsel introduced evidence of a sleep disorder that caused him to fall suddenly asleep, the jury most likely would not have found that he acted with extreme indifference to the value of human life because he simply fell asleep at the wheel.  While petitioner believes such evidence would have been helpful, it is at least equally as likely such evidence would have been damaging to petitioner's case.

As he testified during his PCR trial, petitioner "had fallen asleep like back in '88 and wrecked my truck because I was driving on the street, and I just fell asleep for a couple of seconds and during that time, I ran into a telephone pole."  Respondent's Exhibit 133, p. 8.  Such evidence would have shown that despite a known history of falling asleep involuntarily (including at least one incident leading to a car crash), petitioner continued to drive even while exhausted from working very long shifts.  It also would do nothing to explain petitioner's indifference to the victims of his actions in the aftermath of the crime.[1]  As such, counsel's decision not to present this evidence was the kind of reasonable

---

[1]  The court also notes that petitioner does not allege in his Petition that his sleep disorder was the cause of the injuries he inflicted.  To the contrary, he claims "[t]he reason the car became uncontrollable was because there was a glass that was blocking the brake pe[d]al during the incident."  Petition (#1), p. 11.  He also claims "he was in fact very alert."  *Id* at 12.

9 - OPINION AND ORDER

strategic decision to which courts afford a high level of deference, *Strickland*, 466 U.S. at 689, thus counsel's performance did not fall below an objective standard of reasonableness. For these reasons, the PCR trial court's decision denying relief on this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#1) is denied. The court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this ___9th___ day of August, 2013.

_____

Michael H. Simon
United States District Judge

10 - OPINION AND ORDER